UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IOTTIE INC. and WORLDSHOPPE CO. LTD,

Plaintiff,

v.

HSM CO. LTD, YOUNGKYU YEO, ONETTO and ABC CORP. 1–10, fictitious names used until actual names known,

Defendants.

No. 25-cv-2642 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiffs iOttie Inc. and Worldshoppe Co. Ltd bring this action for breach of contract, conversion, tortious interference, defamation and trade libel, trade secret misappropriation and other state-law claims against Defendants HSM Co. Ltd, Youngkyu Yeo, Onetto and ABC Corp. 1–10. Defendants removed this case from New York State court on March 31, 2025, asserting that removal was proper because Worldshoppe had been fraudulently joined in order to preclude federal diversity jurisdiction. Plaintiffs now move to remand. For the reasons that follow, the motion is denied.

## BACKGROUND

The following facts are drawn from Plaintiffs' original complaint, filed in the New York State Supreme Court, County of New York, on January 29, 2025, Dkt. No. 1-1 ("Compl."),[1] as

---

[1] Counsel for Plaintiffs conceded at oral argument that the Court should consider only the original complaint. *See* Dkt. No. 24 ("Oral Arg. Tr.") at 17; *see also McCulloch Orthopedic Surgical Servs., PLLC v. United Healthcare Ins. Co. of N.Y.*, No. 14-cv-6989 (JPO), 2015 WL 3604249, at *3 (S.D.N.Y. June 8, 2015) ("It is settled law that a motion to remand is evaluated on the basis of the allegations as pleaded at the time of removal.").

well as the declaration included with Plaintiffs' motion, Dkt. No. 16-1 ("Lee Decl.").[2] Plaintiff iOttie is a New York corporation that sells cellphone mounting systems for cars, including through retail platforms such as Amazon and Target. Compl. ¶¶ 3, 12–14. Plaintiff Worldshoppe is a Korean company that helps iOttie fulfill its various orders. *Id.* ¶ 4. It does so by purchasing goods from manufacturers like Defendant HSM and then shipping them to customers on iOttie's behalf, thus earning commissions and service fees. Lee Decl. ¶¶ 5–6.

In 2012, iOttie entered into an exclusive sales and distribution agreement with HSM, a South Korean manufacturer owned by Defendant Youngkyu Yeo. Compl. ¶¶ 5–7, 11. This agreement granted iOttie the exclusive right to sell HSM-manufactured products under iOttie's own brand name in the United States. *Id.* ¶¶ 11–15. Over the next decade, iOttie paid HSM more than $2 million to develop blueprints and tooling charges used to make iOttie's distinctive cellphone mounts. *Id.* ¶ 15.

After the agreement formally expired in 2022, iOttie continued to source products from HSM under a similar course of conduct. *Id.* ¶ 16. This informal arrangement came to an end in 2024, when iOttie notified HSM that it planned to shift production to a more cost-effective manufacturer in China. *Id.* ¶ 18. To facilitate that switch, iOttie asked HSM to transfer its blueprints to the new Chinese manufacturer. *Id.* ¶ 19. Despite repeated requests, however, HSM allegedly refused to hand over iOttie's blueprints. *Id.* ¶ 20. According to iOttie, when HSM finally did provide them, the blueprints were incomplete and could not be used to make iOttie's products. *Id.* ¶ 20. This led to a five-month delay in iOttie's business while it recreated the blueprints, costing it several hundred thousand dollars. *Id.* ¶¶ 21–22. These actions similarly harmed

---

[2] The Court may consider the Lee Declaration because it "clarif[ies] . . . the claims actually alleged." *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 395 (S.D.N.Y. 2009) (explaining that "documents outside the pleadings may be considered" when assessing fraudulent joinder so long as they "clarify or amplify the claims actually alleged").

Worldshoppe, which lost out on the commissions and service fees that it would have earned during the hiatus. Lee Decl. ¶ 7.

Plaintiffs assert that HSM injured iOttie's business in other ways as well. According to the complaint, HSM—acting at the direction of Yeo, its owner—withheld shipments of three containers in 2024, which caused iOttie to miss the "critical 2024 Holiday Season[]" and damaged its relationship with major retailers including Amazon, Walmart, Best Buy and Target. Compl. ¶ 22. Then, in January 2025, HSM and Yeo attended the Consumer Electronics Show ("CES") in Las Vegas and displayed products under their "Onetto" brand, which appeared to be imitations of iOttie's product line. *Id.* ¶ 23. After iOttie demanded that HSM and Yeo remove the knockoffs from display, Yeo allegedly stated "I will kill all of them." *Id.* ¶ 25. He then sent an email to iOttie on January 10, 2025 threatening that he would have his legal team contact iOttie's customers and "interfere with Plaintiffs' marketing and sales of Plaintiffs' products." *Id.* ¶ 64. iOttie later learned that HSM's CES display was not an isolated incident, and that Yeo had been selling copycat "Onetto" products on Amazon since 2015, in apparent violation of the parties' agreement. *Id.* ¶ 26.

Plaintiffs commenced this action in New York State court on January 29, 2025. Dkt. No. 1 ¶ 1. Defendants were served on March 6, 2025, *id.* ¶ 7, and removed the action to this Court on March 31, 2025, *id.* ¶ 23. In their notice of removal, Defendants asserted diversity jurisdiction as the basis of removal. *Id.* ¶ 21. Although Defendants acknowledged that Worldshoppe shares the same citizenship as HSM and Yeo—Korea—they asserted that removal was proper because Worldshoppe had been fraudulently joined in this action for purposes of preventing removal. *Id.* ¶ 20.

Plaintiffs filed an amended complaint on April 29, 2025, Dkt. No. 15, and moved to remand the case back to state court the next day, Dkt. No. 16. Defendants opposed, Dkt. No. 19, and Plaintiffs filed a reply, Dkt. No. 21.[3] The Court heard oral argument on June 5, 2025.

## LEGAL STANDARD

Under the federal removal statute, a defendant may "remove an action to the United States District Court in any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting 28 U.S.C. § 1441(a)). "A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011).

## DISCUSSION

Ordinarily, a defendant may not remove a case based on diversity jurisdiction when there are non-diverse plaintiffs and defendants. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). There is an exception, however, for cases that involve "fraudulent joinder." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Under this doctrine, a district court may "strike nondiverse [parties] who have no real connection with the dispute, or who have no real liability because there is no possibility of recovery against them." *Farnum v. Crown Equip. Corp.*, No. 20-cv-10843 (RA), 2021 WL 2581266, at *2 (S.D.N.Y. June 23, 2021). In order to prove that a non-diverse party was fraudulently joined, the defendant must "demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that

---

[3] Defendants filed an answer including patent counterclaims on June 30, 2025. Dkt. No. 26. Although those patent counterclaims could provide an independent basis for federal jurisdiction, their presence would not necessarily moot the pending motion, as the Court would be able to retain jurisdiction over the state-law claims only if it were to find that they fell within its supplemental jurisdiction. *See* 28 U.S.C. § 1454(d). The Court thus decides the motion to remand on its own terms, without regard for the patent counterclaims.

there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse [party] in state court." *Pampillonia*, 138 F.3d at 461. This standard places a "heavy burden" on defendants who seek to prove fraudulent joinder. *Id.* "Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is no possibility of recovery is such a finding warranted." *Farnum*, 2021 WL 2581266, at *3 (internal quotation marks omitted); *see also Khan v. CXA-16 Corp.*, No. 16-cv-6672 (RA), 2017 WL 1906885, at *2 (S.D.N.Y. May 5, 2017) ("Courts examining a complaint to determine whether a party has been fraudulently joined will subject the complaint to less searching scrutiny than on a motion to dismiss for failure to state a claim." (internal quotation marks omitted)). "[A]ll factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461. "In considering a claim of fraudulent joiner, the Court may consider documentation outside the Complaint itself, but any inconsistencies must be resolved in the plaintiff's favor." *Farnum*, 2021 WL 2581266, at *3.

      Here, Defendants argue that Worldshoppe's inclusion as a plaintiff satisfies the standard for fraudulent joinder. Because Worldshoppe is a Korean corporation, it shares citizenship with all three Defendants, so its presence destroys diversity of citizenship. According to Defendants, that feature is precisely why Worldshoppe was included as a party: to prevent removal of this case to federal court. They argue that the complaint makes scant mention of Worldshoppe—including it as a "mere afterthought"—and cannot possibly state a claim on its behalf. Dkt. No. 19 ("Defs. Opp.") at 9. Defendants point out that Worldshoppe cannot state claims in contract, as it was not a party to any contract with Defendants, nor was it alleged to be a third-party beneficiary. Defendants likewise assert that Worldshoppe cannot press claims that sound in property, as it was

5

not alleged to have owned any of the blueprints or trade secrets that Defendants allegedly converted and misappropriated.

At oral argument, Plaintiffs conceded that Worldshoppe could not possibly proceed under many of the claims asserted in the complaint.[4] They argued, however, that Worldshoppe could possibly state a claim on two of its causes of action: tortious interference with prospective economic advantage, and defamation and trade libel. The Court disagrees.

**I.    Tortious Interference with Prospective Economic Advantage**

Plaintiffs first argue that there is a reasonable possibility that Worldshoppe could state a claim for tortious interference with prospective economic advantage, which would defeat Defendants' fraudulent joinder argument. "To state a claim for this tort under New York law, four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). To satisfy the first element, the plaintiff must "identify a[] concrete relationship with a particular customer." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 483 (S.D.N.Y. 2022); *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 (E.D.N.Y. 2016) ("The failure to identify a specific business relationship with a third party is fatal to a claim of tortious interference." (internal quotation marks omitted)). The second element then requires the plaintiff to allege that the defendant "intentionally caused [that third party] not to enter into a contractual relation with [the plaintiff]." *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995). In other

---

[4] *See* Oral Arg. Tr. at 11 ("Court: [I]f you're not mentioning any of the other counts, then I'm going to assume that you don't have an argument as to why you've alleged a cause of action with respect to [Worldshoppe] for those counts. . . . Plaintiff: Thank you, your Honor.").

6

words, "the defendant must interfere with the business relationship directly," specifically by "direct[ing] some activities toward the third party and convinc[ing] the third party not to enter into a business relationship with the plaintiff." *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997).

There is no reasonable possibility that Worldshoppe could recover against Defendants on its tortious interference claims. To be sure, the complaint alleges that iOttie and Worldshoppe "have established long[]standing business relationships with major retailers" like "Amazon, Walmart, Best Buy, [and] Target," which Defendants interfered with. Compl. ¶ 61. But at argument, counsel for Plaintiffs revealed that Worldshoppe never signed any contracts with those parties—only iOttie did.[5] According to counsel's concessions, which are binding on Plaintiffs here, *see Soukaneh v. Andrzejewski*, 112 F.4th 107, 118 (2d Cir. 2024), iOttie would enter into contracts with third parties like Amazon or Walmart to sell products, after which Worldshoppe would merely fulfill iOttie's orders, earning fees and commissions from iOttie in the process. *See* Oral Arg. Tr. at 15, 17–18. In other words, Worldshoppe itself never entered into contracts with any of these third parties, nor was it in a position to do so. To the extent Worldshoppe suffered any harm, it was because Defendants allegedly interfered with iOttie's contracts, which caused downstream and incidental harm to Worldshoppe in the form of lost commissions.

Worldshoppe simply could not recover in tortious interference on those facts. There are no allegations that Defendants' conduct prevented Worldshoppe from signing any contracts of its own. *See Fonar Corp.*, 957 F. Supp. at 482. And to the extent Worldshoppe stood to benefit from

---

[5] *See* Oral Arg. Tr. at 14–15 ("Court: Just to clarify, did World Shop have any contracts with Amazon or Target or Best Buy or any of the other entities? . . . . Plaintiff: World Shop sells these goods back to iOttie in [its] Texas warehouse, then iOttie takes over because iOttie has contract[s] with those places."); *see also id.* at 17–18 ("Plaintiff: Your Honor, the contract[s] with Amazon, Walmart, Best Buy, Target, attendees of CES, all of them, when they do contract, yes, of course they contract [with] iOttie. But when we sell the goods, because iOttie has to purchase from World Shop, it is World Shop [that] is selling back to iOttie for all these contracts.").

7

iOttie's *separate* contracts, "New York courts have declined to recognize the right of incidental beneficiaries to sue for tortious interference of contract." *Tasso v. Platinum Guild Int'l*, No. 94-cv-8288 (LAP), 1998 WL 841489, at *4 (S.D.N.Y. Dec. 3, 1998); *see also Alvord & Swift v. Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 281 (1978) ("There exists . . . no tort liability to incidental beneficiaries not in privity.").[6]  It is thus not enough for Worldshoppe to say that Defendants interfered with iOttie's contracts—it must allege that Defendants "direct[ed] some activities toward" third parties like Amazon and "convince[d] [them] not to enter into a business relationship with" Worldshoppe. *Fonar Corp.*, 957 F. Supp. at 482.  Plaintiffs' references to Amazon and Walmart thus lead nowhere, as Worldshoppe never had any prospect of contracting with them to begin with.  Put simply, "any injury" to Worldshoppe's fee intake "was no more than an incidental byproduct" of iOttie's contracts, which rules out a tortious interference claim based on them. *Hadami v. Xerox Corp.*, 272 F. Supp. 3d 587, 602 (S.D.N.Y. 2017).

At oral argument, Plaintiffs also pivoted to another theory:  that Defendants tortiously interfered with Worldshoppe's prospective business with "attendees of the [2025] CES convention," specifically by displaying knockoff products under its Onetto brand.  *See* Compl. ¶ 61.  But that argument also comes up short.  For one thing, the complaint does not allege that Worldshoppe was poised to enter into contracts with the CES attendees; if anything, as with Amazon and Walmart, iOttie was the party actually pursuing those relationships.  These allegations about CES attendees thus fail to "identify any concrete relationship with a particular customer" that Worldshoppe was unable to secure, as would be required to state this sort of claim.  *Camelot SI*, 632 F. Supp. 3d at 483.  And even if Worldshoppe had been in the running to contract with the

---

[6] Although it is possible for *intended* beneficiaries to bring such a claim, the complaint does not allege that Worldshoppe was such a beneficiary.  *See Quantlab Fin., LLC v. Tower Rsch. Cap., LLC*, 715 F. Supp. 2d 542, 550 n. 7 (S.D.N.Y. 2010).

CES attendees, "generalized allegations about hypothetical business relations are not enough" to sustain a tortious interference claim. *Nourieli v. Lemonis*, No. 20-cv-8233 (JPO), 2021 WL 3475624, at *6 (S.D.N.Y. Aug. 6, 2021); *Camelot SI*, 632 F. Supp. 3d at 483 ("[G]eneric references to customer relationships do not suffice."); *Lord & Taylor EComm LLC v. Circle Bus. S.A.*, No. 23-cv-6315 (NRB), 2025 WL 1105174, at *7 (S.D.N.Y. Apr. 14, 2025) ("A relationship with 'the public' at large is not the sort of continuing business relationship that can be the subject of a tortious interference claim." (internal quotation marks omitted)).[7] The allegations about CES attendees fit that mold precisely: The complaint offers nothing concrete about who these attendees were, what contracts Worldshoppe sought to forge with them or how Defendants prevented those relationships from materializing.[8]

## II.     Defamation and Trade Libel

Plaintiffs also argue that Worldshoppe's claim for "defamation and trade libel" survives the fraudulent joinder test.[9] They contend that two of Defendants' statements are actionable: first, Yeo's "I will kill all of them" threat at the CES convention; and second, the emails he sent to his legal team instructing them to interfere with Plaintiffs' operations by contacting their customers. *See* Dkt. No. 17 at 4; *see also* Oral Arg. Tr. at 29. Once again, the Court concludes otherwise.

Under New York law, defamation and trade libel are two similar but "distinct causes of action." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002).

---

[7] At oral argument, Plaintiffs' counsel also referred to other contracts that Worldshoppe may have had with other unnamed parties "worldwide." *See* Oral Arg. Tr. at 15. Even if the Court were to consider these other contracts, which are not mentioned in any pleading or declaration, they would similarly fail for making only generalized allegations about unspecified customers. *See Nourieli*, 2021 WL 3475624, at *6.

[8] The Court would reach the same result even if it looked to the amended complaint, which does not allege any additional facts that establish a reasonable possibility that Worldshoppe could state a tortious interference claim. *See* Dkt. No. 15 ¶¶ 71–85 (asserting additional ways in which Worldshoppe suffered harm without adding any allegations that could support a tortious interference claim on its behalf).

[9] Although the complaint alleges "defamation and trade libel" as a single count, Compl. ¶ 79, New York law treats them as two distinct causes of action, as further discussed below.

"To state a claim for defamation under New York law, a plaintiff must allege that the defendant made a statement that was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory per se or caused the plaintiff special harm." *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 280–81 (S.D.N.Y. 2016) (citing *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011)). Along similar lines, the tort of trade libel, or "injurious falsehood," "requires the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment." *Banco Popular N. Am. v. Lieberman*, 905 N.Y.S.2d 82, 85 (1st Dep't 2010). Although the elements differ slightly, both claims require that the defendant have made a statement of "fact[]" that is "capable of being proven false," as opposed to a nonactionable opinion. *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152–53 (1993) (defamation); *WDF Inc. v. Kohler Co.*, 816 N.Y.S.2d 381, 381 (2d Dep't 2006) (trade libel). Whether a challenged statement was one of fact or opinion is a question of law for the Court, which must assess "whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (alterations and internal quotation marks omitted).

      Plaintiffs first argue that Yeo committed defamation or trade libel by making his "I will kill all of them" statement. According to the Complaint, Yeo made this threat at the 2025 CES show. Compl. ¶ 23. After iOttie realized that HSM and Yeo were displaying products that "mimicked" iOttie's designs, iOttie demanded that Defendants remove them from their display. *Id.* ¶ 24–25. This allegedly prompted Yeo to state "I will kill all of them," purportedly in reference to iOttie and WorldShoppe. *Id.*

Nothing about this statement could give rise to defamation or trade libel, because it was not a statement of "fact[]" that was "capable of being proven false." *Gross*, 82 N.Y.2d at 152–53.[10] Threatening to "kill all of them" says nothing factual about Worldshoppe; those words do not reference Worldshoppe by name or say anything about its products. Indeed, it is not even clear that Yeo was referring to Worldshoppe to begin with, as opposed to expressing frustration with iOttie for demanding that Yeo remove his products from display. And even if Yeo had been referring to Worldshoppe, his statement was more of an expression of frustration or nonspecific threat of future activity—neither of which would be actionable here. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (explaining that "rhetorical hyperbole" and "imaginative expression" are not defamatory (internal quotation marks omitted)); *Shawe v. Kramer Levin Naftalis & Frankel LLP*, 91 N.Y.S.3d 369, 372 (1st Dep't 2018) (finding nonspecific predictions "not actionable as defamation" because they did not reasonably convey a factual assertion); *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 255 (1991) (same). Simply put, Yeo's statement "amounts to no more than nonactionable opinion or rhetorical hyperbole," which extinguishes any reasonable possibility that Worldshoppe could state a claim based on it. *Bowen v. Van Bramer*, 168 N.Y.S.3d 107, 109–10 (2d Dep't 2022) (internal quotation marks omitted).

Plaintiffs fare no better in arguing that Yeo's emails to iOttie about his legal team could give rise to defamation or trade libel. According to the complaint, Yeo emailed Plaintiffs shortly after the CES altercation, on January 10, 2025, and "threatened" that HSM's legal team would "contact Amazon, Walmart, Best Buy, and Target to interfere with Plaintiffs' marketing and sales

---

[10] It is not clear whether Yeo made this statement in writing or orally. If it was orally, then Worldshoppe's claim would, as a technical matter, be one for trade slander or disparagement of goods. *See* Matthew A. Cartwright, Kirk Reasonover & Joseph C Peiffer, Litigating Business and Commercial Tort Cases § 10:1 (2024). That would be a distinction without a difference here, however, because trade slander still requires that the challenged statement be defamatory. *See Fashion Boutique*, 314 F.3d at 59.

11

of Plaintiffs' products." Compl. ¶ 64. But at the very least, the email fails a threshold requirement of defamation or trade libel: that the statement was "published to a third party." *See Richards v. Sec. Res.*, 133 N.Y.S.3d 12, 14 (1st Dep't 2020). Here, the email itself was sent from Yeo to Plaintiffs, as is confirmed by the copy of the email submitted by Defendants in their opposition. *See* Dkt. No. 20-1 (email from Yeo to two iOttie email addresses).[11] Because there are no allegations that any third party saw or was even aware of it, the email cannot constitute defamation or trade libel for that reason alone and the Court need not address other reasons the claims may fail.

## CONCLUSION

In sum, there is no reasonable possibility that Worldshoppe could state a claim for tortious interference with prospective economic advantage, or for defamation or trade libel. The motion to remand is thus denied. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 16 and 17.

SO ORDERED.

Dated:   July 9, 2025
         New York, New York

Ronnie Abrams
United States District Judge

---

[11] Although no copy of the email was attached to the complaint, the Court may consider it here, both because it is integral to the complaint, *Biro v. Conde Nast*, No. 11-cv-4442 (JPO), 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2024), and because documents outside the pleadings may be considered when they "clarify or amplify" the claims challenged for fraudulent joinder, *MBIA Ins. Corp.*, 706 F. Supp. 2d at 395–96.